David K. W. Wilson, Jr.
MORRISON, MOTL & SHERWOOD
401 North Last Chance Gulch
Helena, MT  59601
(406) 442-3261
(406) 443-7294 (Fax)
kwilson@mmslawgroup.com

John Heenan
BISHOP & HEENAN
3970 Avenue D, Suite A
Billings, Montana  59102
(406) 839-9091 Phone
(406) 839-9092 Fax
john@bishopandheenan.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| PATRICIA P. DAVIS,<br><br>           Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, EXPERIAN,<br>F.I.A. CARD SERVICES, N.A. d/b/a BANK OF AMERICA and MIDLAND FUNDING, LLC, d/b/a MIDLAND CREDIT MANAGEMENT, INC.<br><br>           Defendants. | Cause No.: _____<br><br>**VERIFIED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, Patricia P. Davis, and brings this cause of action of violations of the Fair Credit Reporting Act, Fair Debt Collection Practices Act, the Montana Consumer Protection Act, negligence and punitive damages.

## PARTIES

1. Plaintiff Patricia P. Davis (Ms. Davis) is a resident of Helena, Lewis and Clark County, Montana.  She is retired.

2. Defendant Equifax Information Services, LLC (Equifax) is a foreign corporation duly registered to do business in the State of Montana.

3. Defendant TransUnion, LLC (TransUnion), is a foreign corporation duly registered to do business in the State of Montana.

4. Defendant Experian Information Solutions (Experian) is a foreign corporation duly authorized to do business in the State of Montana.

5. Defendant F.I.A. Card Services, N.A. is a national bank engaged in credit card lending and business in the State of Montana under the name Bank of America.

6. Midland Funding is a collection agency with its headquarters in the State of California, licensed to do business in the State of Montana. It conducts collections directly and through its affiliate, Midland Credit Management or MCM.

## VENUE AND JURISDICTION

7. Equifax, TransUnion and Experian are "consumer reporting agencies" as that term is defined by 15 U.S.C. § 1681a(f) of the Fair Credit Reporting Act. Bank of America is a "furnisher" of information, as that term is used at 15 U.S.C. § 1681s-2. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331, in that this dispute involves predominant issues of federal law. Specifically, this Court has jurisdiction under 15 U.S.C. § 1681p. The Defendants are liable to Ms. Davis pursuant to the provisions of the "Consumer Credit Protection Act of 1968," 15 U.S.C. § 1601, *et seq.*, as well as other applicable federal statutes. Jurisdiction of this Court against Midland Funding also arises under 15 U.S.C. §1692k (d), 28 U.S.C. §1337, and 28 U.S.C. §1331. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367. Declaratory relief is available pursuant to 28 U.S.C. §2201 and §2202. Defendants are also liable to Ms. Davis pursuant to the laws of the State of Montana, which claims may be brought under the pendant jurisdiction of this Court.

8. Venue is proper in the Helena Division, pursuant to Rule 3.2 (b), Local Rules of Procedure and § 25-2-122, MCA, in that Ms. Davis resides in, and Bank of America and Midland Funding do business in, Helena, Lewis and Clark County, Montana.

## FACTS

*Background*

9.     In or around March 26, 2009, an agent of Bank of America or Midland called Ms. Davis and aggressively informed her he was a debt collector and demanded that she pay that day on an alleged debt of $6,000 she owed. He informed Ms. Davis that he had already obtained a judgment against Ms. Davis and would "file" this existing judgment that day and commence to seize her property if she did not pay the debt immediately.  The caller did not identify himself, who he was collecting for, or the identity of the alleged original creditor. Ms. Davis, intimidated and confused by this verbally abusive attack, informed the collector that she did not have $6,000 that she could pay that day. The caller then said that he would "consult" with his "client" and try to make other payment arrangements. But first, he told Ms. Davis, before he could make any payment arrangements, she would have to give him her bank account number and commit to paying at least $700 immediately. Reluctantly, but concerned about possible seizure of her property, Ms. Davis provided the banking information. Throughout this conversation the collector was rude, threatening and belligerent. The collector then put Ms. Davis on hold while he purportedly consulted with his client. While she was on hold, Ms. Davis used another phone to check with both Justice and District clerks of court and was able to confirm that a judgment against her, as claimed by

the collector, did not exist. When the collector came back on the line, Ms. Davis confronted him with the deception she had discovered and told him emphatically that she was retracting her consent, either implied or inferred, for him to withdraw funds from her bank account.

10. Nevertheless, soon after that call, Ms. Davis discovered that somebody had withdrawn $700 from her bank account, and that same party had directed the bank to make more withdrawals, each for $500, on an on-going basis. Ms. Davis was able to stop payment on two pending $500 payments, but the $700 payment went through. The unauthorized payments had overdrawn Ms. Davis' account, alerting her to the problem.

*The Lawsuit*

11. In 2011, Midland Funding served a complaint on Ms. Davis, Montana First Judicial District Court, Lewis and Clark County Cause No. BDV 2011-308, seeking to collect $5,100.36. A copy of the Complaint is attached hereto as **Exhibit A**. Ms. Davis filed an Answer denying that the debt was hers. **Exhibit B**.

12. In 2012, Midland served discovery on Ms. Davis. Attached as exhibits to the Requests for Admission were two purported bills to Ms. Davis from Bank of America, **Exhibits C and D,** dated April and May of 2009 attempting to collect a balance of $5,100.36. The April bill showed a "credit" of $700, dated March 31, 2009; and the May bill showed first two "credits" of $500 apiece, then two

"returned checks" of $500 apiece, coinciding in time and amount with the unauthorized withdrawals that had been made pursuant to the telephone call in March, 2009. Upon reviewing these bills, Ms. Davis first realized that it was Bank of America, or its agents or collectors on behalf of Bank of America, who had taken $700 from her account in 2009, and had attempted to take the additional $1,000 more.

13. Ms. Davis sent Midland's counsel responses and a letter on July 16, 2012, disputing the debt was hers, and demanding verification of the debt within 30 days as required under the Fair Debt Collection Practices Act. **Exhibit E.** On July 25, 2012, Midland moved to dismiss its own lawsuit (**Exhibit F**), and on August 17, 2012, the Court granted the motion, dismissing the lawsuit, without prejudice. (**Exhibit G.**)

14. Ms. Davis subsequently discovered that the Bank of America account and the Midland Funding collection account were both showing up as adverse tradelines on her credit reports.

*TransUnion Dispute*

15. On September 20, 2012, Ms. Davis wrote TransUnion disputing the Bank of America and Midland Funding tradelines on her most recent TransUnion credit report.

16. TransUnion conveyed the dispute to Bank of America and Midland Funding. On or around October 2, 2012, TransUnion responded to the dispute letter, without changing the disputed trade lines, simply noting that it had ended its investigation.

*Experian Dispute*

17. On September 18, 2012, Ms. Davis wrote Experian disputing the Bank of America and Midland Funding tradelines on her August 17, 2012 Experian credit report.

18. Experian conveyed the dispute to Bank of America and Midland Funding. On October 10, 2012, Experian responded to Ms. Davis' dispute informing her it was keeping the Bank of America tradeline as it was, and "updating" the Midland Funding tradeline. The Midland Funding account remained on her credit reports, but Experian added a notation that Ms. Davis disputed it.

*Equifax Dispute*

19. In late September 2012, Ms. Davis wrote Equifax disputing the Bank of America and Midland Funding tradelines in her September 14, 2012 credit reports.

20. Equifax conveyed the dispute to Bank of America and Midland Funding. On October 16, 2012, Equifax responded to Ms. Davis' dispute by "verifying" that both accounts belonged to her and were being reported correctly.

*Midland Dispute*

21. Separately, and subsequent to the dismissed lawsuit, Ms. Davis wrote Midland Funding directly disputing its continued reporting, and collecting, of the debt she did not owe.

22. On October 12, 2012, Midland Credit Management, Inc. responded alleging it was properly reporting the account as hers. Midland continues to try to collect the account, with the latest (October 5, 2012) bill showing a balance of $6,652.50 due. In addition, Midland continues to attempt to collect the fraudulent account.

*General Damages*

23. Ms. Davis has been harmed by the Defendants' actions. Her damages include but are not limited to damage to credit, lost time and income, expenses of responding to the lawsuit, and emotional distress and mental anguish resulting in physical illness exacerbated by the stress of Defendants' actions.

## *CAUSES OF ACTION AGAINST DEFENDANT BANK OF AMERICA*

### COUNT ONE
### Negligent and/or Willful Violations of the Fair Credit Reporting Act

24. The preceding paragraphs are realleged as though set forth in full hereunder.

25. After receiving a consumer dispute from a consumer reporting agency, a creditor or furnisher of information must conduct a reasonable investigation into the matters disputed, and correct the reports made to credit reporting agencies to ensure that the information on the consumer's report is accurate. 15 U.S.C. § 1681 s (2)(B).

26. Following disputes by Ms. Davis in 2012, the credit reporting agencies conveyed her disputes to Bank of America by computer or otherwise. Bank of America failed to conduct a reasonable reinvestigation of Ms. Davis' purported account, failed to change its reports, and continued to inaccurately report the Bank of America account as hers.

27. Bank of America is liable to Ms. Davis for damages and attorney fees under 15 U.S.C. § 1681n and/or § 1681o.

### COUNT TWO
### Defamation

28. The preceding paragraphs are realleged as though set forth in full hereunder.

29. As set forth herein, Bank of America willfully and/or maliciously defamed Ms. Davis by repeatedly reporting and therefore publishing the inaccurate Bank of America account information to Equifax, Experian and TransUnion, among others. Those reports were false and inaccurate because the account did not belong to Ms. Davis. She had never had a "Mexicana" Bank of America credit card, nor is she a "Mexicana" rewards member. Bank of America either knew or should have known that Ms. Davis was not responsible for the account, yet knowingly published, by reporting to the credit reporting agencies, this adverse and inaccurate account information to the credit bureaus.

30. Bank of America's publication of false and inaccurate credit information concerning Ms. Davis was done with malice, using clearly deceptive and abusive collection practices – as described before – and/or with willful intent to injure Ms. Davis, causing damage to her as set forth herein. Accordingly, Bank of America is liable to Ms. Davis for defamation.

## COUNT THREE
### Negligence

31. The preceding paragraphs are realleged as though set forth in full hereunder.

32. Bank of America was negligent and/or grossly negligent in its handling of the fraudulent Davis credit card account number . . . .7410. It demonstrated a want of ordinary skill in managing its affairs, in its failure to

reasonably investigate and respond to Ms. Davis' disputes, in its failure to use reasonable care in opening and administering its account and its collection activities against Ms. Davis, and in attempting to collect, and report inaccurately to credit reporting agencies. In doing so, it violated its duties to Ms. Davis.

33. Bank of America's negligent and/or gross negligent actions caused damage to Ms. Davis as set forth herein.

### COUNT FOUR
### Violation of Montana Consumer Protection Act

34. The preceding paragraphs are re-alleged as though set forth in full hereunder.

35. This action is subject to the Montana Consumer Protection Act, §§ 30-14-101, *et seq.*, MCA.

36. Section 30-14-103, MCA, prohibits unfair or deceptive acts or practices.

37. Bank of America engaged in numerous unfair or deceptive acts or practices, including, but not limited to:

>    a. Attempting to collect against Ms. Davis a debt that she did not owe;
>    b. by means of collection efforts, using deceptive actions, outrageous, malicious and completely false statements, and intimidation to harass Ms. Davis;
>    c. Reporting the fraudulent account on Ms. Davis' credit reports; and
>    d. failing to properly reinvestigate the debt.

38. Bank of America is liable, under § 30-14-133, MCA, for Ms. Davis' actual damages, three times her actual damages, and her attorney fees.

## *CAUSES OF ACTION AGAINST DEFENDANT MIDLAND FUNDING*

### COUNT FIVE
### Violation of Fair Debt Collection Practices Act

39. The preceding paragraphs are realleged as though set forth in full hereunder.

40. Midland Funding is a debt collector as defined at 15 U.S.C. § 1692a (6), and Ms. Davis is a consumer as defined at 15 U.S.C. § 1692a (3).

41. Midland Funding violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 (d), (e), and (g). Its violations include, but are not limited to:

    a. Using abusive collection practices;

    b. Seeking to collect a debt that Ms. Davis did not owe by falsely representing that she owed it, and communicating to her the false information that she owed the debt;

    c. Failing to timely and properly validate the debt;

    d. Reporting the debt as Ms. Davis's to the credit reporting agencies; and

    e. Continuing to collect the debt.

42. As a result of the foregoing violations of the FDCPA, Midland Funding is liable to Ms. Davis for declaratory relief that its conduct violated the

FDCPA, actual damages, statutory damages, and costs and attorney fees under 15 U.S.C. § 1692 k.

## COUNT SIX
## Violation of Fair Credit Reporting Act

43. The preceding paragraphs are realleged as though set forth in full hereunder.

44. After receiving a consumer dispute from a consumer reporting agency, a creditor or furnisher of information must conduct a reasonable investigation into the matters disputed, and correct the reports made to credit reporting agencies to ensure that the information on the consumer's report is accurate. 15 U.S.C. § 1681 s (2)(B).

45. Following disputes by Ms. Davis in 2012, the credit reporting agencies conveyed her disputes to Midland by computer or otherwise. Midland failed to conduct a reasonable reinvestigation of Ms. Davis' purported account, failed to change its reports, and continued to inaccurately report the Midland account as hers.

46. Midland is liable to Ms. Davis for damages and attorney fees under 15 U.S.C. § 1681n and/or § 1681o.

## COUNT SEVEN
## Violation of Montana Consumer Protection Act

47. The preceding paragraphs are re-alleged as though set forth in full hereunder.

48. This action is subject to the Montana Consumer Protection Act, §§ 30-14-101, *et seq.*, MCA.

49. Section 30-14-103, MCA, prohibits unfair or deceptive acts or practices.

50. Midland engaged in numerous unfair or deceptive acts or practices, including, but not limited to:

   a. Attempting to collect against Ms. Davis a debt that she did not owe;
   b. by means of collection efforts, using deceptive actions, patently false statements, and intimidation to harass Ms. Davis;
   c. Reporting the fraudulent account on Ms. Davis' credit reports; and
   d. failing to properly reinvestigate the debt.

51. Midland is liable, under § 30-14-133, MCA, for Ms. Davis' actual damages, three times her actual damages, and her attorney fees.

### *CAUSES OF ACTION AGAINST DEFENDANTS EQUIFAX, TRANSUNION AND EXPERIAN*

## COUNT EIGHT
## Violations of the Fair Credit Reporting Act

52. The preceding paragraphs are realleged as though set forth in full hereunder.

14

53. Defendants Equifax, TransUnion and Experian have violated 15 U.S.C. § 1681i of the Fair Credit Reporting Act by negligently and/or willfully failing to perform a reasonable investigation of Ms. Davis' disputes of the fraudulent accounts appearing on her credit reports.

54. Defendants Equifax, TransUnion and Experian have also willfully and/or negligently violated 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act by failing to maintain reasonable procedures to assure maximum possible accuracy of the credit reports that they generated regarding Ms. Davis.

55. Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, the CRA Defendants' actions in negligently violating the Fair Credit Reporting Act entitle Ms. Davis to recovery for her actual damages as well as attorneys' fees and costs.  In addition, the CRA Defendants' actions in willfully violating the Fair Credit Reporting Act entitle Ms. Davis to the recovery of actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

56. The CRA Defendants also maliciously and/or willfully defamed Ms. Davis by their continued publications of the erroneous and derogatory information to third parties after they knew or should have known that Ms. Davis was not responsible for the account.

57. The CRA Defendants' actions and omissions are evidence of their recklessness, gross negligence, and wanton disregard for Ms. Davis's rights,

personal and financial safety, credit reputation and good name, as well as her emotional well being.

58. As a result of CRA Defendants' violations of the Fair Credit Reporting Act and their malicious defamations of Ms. Davis' good name, Ms. Davis is entitled to actual and punitive damages from CRA Defendants pursuant to 15 U.S.C. § 1681n and o.

## COUNT NINE
## Negligence

59. The preceding paragraphs are realleged as though set forth in full hereunder.

60. Defendants Equifax, TransUnion and Experian failed to act in a reasonably workmanlike or skillful manner and/or otherwise acted negligently as set forth herein. Their negligent acts include, but are not limited to: their inaccurate reporting of accounts that did not belong to Ms. Davis on Ms. Davis' credit reports; and their failure to correct the inaccurate reports after Ms. Davis had disputed them.

61. Equifax, TransUnion and Experian reported the false information concerning Ms. Davis on credit reports with reckless disregard of whether or not the statements made were false.

62. Equifax, TransUnion and Experian are liable to Ms. Davis for their negligent acts.

## COUNT TEN
## Montana Consumer Protection Act

63. The preceding paragraphs are realleged as though set forth in full hereunder.

64. The Montana Consumer Protection Act, § 30-14-101, *et seq.,* MCA, prohibits unfair or deceptive acts or practices in Montana.

65. Defendants Equifax, TransUnion and Experian's unfair or deceptive acts or practices in this case include, but are not limited to: their inaccurate reporting of fraud accounts on Ms. Davis' credit report that did not belong to her; their numerous refusals to conduct a reasonable investigation and correct the incorrect information being reported on Ms. Davis' credit reports; and their continuing, ongoing, willful and intentional efforts to damage Ms. Davis' credit.

66. Pursuant to § 30-14-133, MCA, Ms. Davis is entitled to actual damages, treble damages and attorneys fees.

## *CAUSES OF ACTION AGAINST AGAINST ALL DEFENDANTS*

## COUNT ELEVEN
## Punitive Damages

67. The preceding paragraphs are realleged as though set forth in full hereunder.

68. Ms. Davis is entitled to an award of punitive damages under § 27-1-221, MCA, for the actions of the Defendants as set forth herein.

69. The Defendants acted with actual malice toward Ms. Davis in that they had knowledge of the fact that Ms. Davis did not owe the debt they were seeking to collect, and acted with intentional or conscious disregard of the high probability of injury that this information would cause Ms. Davis, or with indifference to that fact.

70. Defendants acted with actual fraud toward Ms. Davis, as more fully set forth herein, in that it made a representation with the knowledge of its falsity, or concealed a material fact with the intention of harming her.

71. Ms. Davis is entitled to punitive damages

## PRAYER FOR RELIEF

WHEREFORE, Ms. Davis prays for the following relief:

1. For actual damages;

2. For treble actual damages, pursuant to § 30-14-133, MCA;

3. For attorneys fees and costs, pursuant to 15 U.S.C. 1681n & o, 15 U.S.C. § 1692 k, and § 30-14-133, MCA;

4. For punitive damages, pursuant to 15 U.S.C. 1681n and § 27-1-221, MCA; and

5. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, F. R. Civ. P., the Plaintiffs hereby demand a trial by jury of the issues triable by right by jury.

DATED this 8th day of January, 2013.

By: /s/ David K. W. Wilson, Jr.
David K. W. Wilson, Jr.
Morrison, Motl & Sherwood
*Attorneys for Plaintiff*

## VERIFICATION

STATE OF MONTANA                                        )
                                                        :ss.
County of Lewis and Clark                               )

      Patricia P. Davis, being first duly sworn, deposes and says:

      That she is the Plaintiff in the foregoing Complaint; that she has read and knows the contents thereof; and that the facts and matters contained therein are true, accurate, and complete to the best of her knowledge and belief.

_____
Patricia P. Davis

      On this 7th day of January, 2013, before me, a notary public, personally appeared Patricia P. Davis, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

BETH SHEAFOR
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
October 20, 2014

_____
Notary Public for the
State of Montana
Residing at:
My commission expires:

20